Filed 2/4/15  P. v. Israel CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B252966 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA081122) |
| v. | |
| DAVID ISRAEL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark E. Windham, Judge.  Affirmed in part, reversed in part, and remanded with directions.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Acting Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Connie H. Kan, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, David Israel, appeals his conviction for lewd act on a child under 14, with recidivist sexual offender and prior serious felony conviction findings (Pen. Code, §§ 288, subd. (a), 667.71, 667, subds. (b)-(i)).[1] He was sentenced to state prison for a term of 55 years to life.

The judgment is affirmed in part, reversed in part, and remanded with directions.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *The charged offense*.

On June 19, 2012, eight-year-old Sandra A. was riding an M.T.A. bus as part of her second-grade class field trip. Sitting across from her was defendant Israel, who put his bag on Sandra's legs and started squeezing her knee with his hand. She tried to move her leg, but "he touched it again and he didn't stop." Israel then took his "private part out" and touched her knee with it. His hand was "squishing" his private part and Sandra could feel something soft touching her knee; it felt different from his hand which had felt hard. Sandra was scared: "I tried to scream, but . . . I couldn't talk."

Yadira Corona, one of the field trip chaperones, saw Israel standing in front of Sandra and leaning up against her. Corona testified: "At one point he kind of like tilted back and I saw his penis." Israel was moaning, holding his penis and touching Sandra's knee with the tip of it. Corona walked up to Israel and hit him. He pushed her away and tried to get off the bus. Sandra was crying and scared. Corona testified Israel was "cussing everybody out. He said he had a knife in his pocket." Corona could see that his pants zipper was open.

Henry Hernandez, the bus driver, testified a woman ran toward him and shouted, "Bus driver, bus driver, somebody was abusing a child back there. Please do not let him out of this bus." Then Israel came up and told Hernandez he needed to get off the bus. Hernandez told Israel he would not open the doors, and he alerted his dispatchers that he

---

[1] All further references are to the Penal Code unless otherwise specified.

needed the police. Israel told Hernandez, "Open the God damn door. You don't know who you're dealing with. And you better open the door right now."

Hernandez had stopped the bus to wait for the police and he still refused to open the door. Israel was leaning very close to him, so Hernandez got up out of the driver's seat because he was afraid of getting "punched in the face sitting down." Israel then put his knee up against Hernandez's groin and threatened "to rearrange [Hernandez's] testicles" if he didn't open the door. Two male passengers then came up and subdued Israel. The police arrived and arrested him. Hernandez pointed out to them that Israel's pants zipper was down.

Los Angeles Police Department Officer Gary Castaldo was one of the responding officers. He noticed that Israel's pants zipper was completely down. Castaldo spoke to Sandra, who "was crying, she was emotional, she was somewhat hysterical, and she was very frightened."

2. *Prior sexual offenses*.

The prosecution put on evidence showing Israel had also committed the following prior sexual offenses.

a. *Erica N.*

On June 12, 2001, 29-year-old Erica N. was riding a bus when she felt Israel bumping up against her shoulder. After a while she realized he was rubbing her with his "hard erect penis through his pants." Erica was terrified. She leaned forward and put her elbows on her knees so Israel could no longer touch her. She got off the bus at the next stop.

Detective Connie Zych, who worked for the Los Angeles Police Department transit bus division, had been on the bus during this incident. She saw Israel position himself next to Erica and press his crotch into her shoulder. Israel had an erection and he was using his duffel bag to conceal what he was doing.

3

b. *Patricia A.*

In August 2000, 23-year-old Patricia A. was riding a bus when Israel sat down next to her. He put his jacket over her leg and reached his arm under the jacket and started touching her leg. When Patricia turned toward him, Israel "already had his zipper down and part of his penis was out. I got scared." After Patricia blocked him with her hand, Israel touched her breast. Undercover police officers on the bus apprehended him.

c. *Marisol T.*

Sometime in August 2000, 15-year-old Marisol T. was riding a bus when Israel sat down next to her. He had a coat over his head and he leaned against her. Marisol thought he was drunk, so at first she didn't pay much attention. Eventually she noticed his coat was covering her thigh and she felt his hand moving on her inner thigh toward her genital area. Marisol got off the bus. Officers approached her and she reported the incident to them.

d. *Isabel P.*

On December 20, 1999, 28-year-old Isabel P. was riding a bus when Israel got on and sat next to her: "I just felt a hand that started touching me on my right leg . . . like walking fingers." Israel was touching her "[c]lose to my leg and my stomach, my abdomen." Isabel stood up immediately and asked the driver to call the police. The driver did so, but when other passengers complained about the delay, the driver opened the doors and Israel got off.

**CONTENTIONS**

1. The trial court erred by refusing to vacate Israel's Three Strikes prior.

2. The trial court did not award Israel the correct number of presentence custody credits.

3. A child abuse prevention restitution fine imposed pursuant to section 294 should be stricken.

4. (By the Attorney General) The trial court erred by not imposing appropriate penalties and surcharges in connection with a section 290.3 fine.

4

5. (By the Attorney General) The trial court erred by not imposing appropriate penalties and surcharges in connection with a section 288, subdivision (e), fine.

## DISCUSSION

1. *The trial court did not err by denying Israel's* Romero *motion.*

Israel contends the trial court abused its discretion by refusing to dismiss, under the authority of *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, a prior conviction used to double his sentence under the Three Strikes law. This claim is meritless.

a. *Legal principles.*

The factors to be considered in ruling on a *Romero* motion were set forth in *People v. Williams* (1998) 17 Cal.4th 148, 161: "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law . . . 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion." (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial

5

judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at pp. 376-377.) Hence, " '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' " (*Id*. at p. 378.)

> b. *Israel's sentencing.*

According to the probation report, Israel's record as an adult included several misdemeanor convictions for non-sexual offenses (driving under the influence, in January 1991; driving under the influence and driving with a suspended license, in July 1991; battery, in July 2001); as well as convictions for two sex-related offenses (misdemeanor indecent exposure and felony child molesting in November 2001). Israel received a three-year prison term for the 2001 conviction.

The trial court denied Israel's *Romero* motion, saying: "Under *Romero* there was a period of time where the defendant did not re-offend, but the conduct is disturbing and was repeated conduct that continued unabated until he was sentenced to prison. I can't see that the mitigation is such that this would qualify. The *Romero* motion is denied."

> c. *Discussion.*

Israel contends the trial court should have granted his *Romero* motion.[2] He acknowledges his Three Strikes prior (the 2001 felony child molesting conviction) "was for conduct similar to that in the current offense," but argues he has never used violence and that "none of [his] conduct involved anything other than essentially touching over

---

[2] The Attorney General asserts the trial court was prohibited from striking Israel's prior conviction for Three Strikes purposes because the jury returned a recidivist sexual offender finding. Not so. Although a Three Strikes sentence may be imposed in addition to a sentence under section 667.71, the trial court still has discretion to grant *Romero* relief. (*People v. Snow* (2003) 105 Cal.App.4th 271, 283 [after choosing to apply either section 667.61 or section 667.71, trial court "also has the discretion under section 1385" to grant *Romero* motion]; see also *People v. Hammer* (2003) 30 Cal.4th 756, 771 [where trial court properly imposed sentence under section 667.61, it still needed to exercise its *Romero* discretion].)

6

clothing." He complains "the trial court seemed to be consumed by appellant's prior 'repeated conduct' to the exclusion of all other relevant factors." According to Israel, "[T]his was an abuse of discretion as the Supreme Court has cautioned that, 'While a defendant's recidivist status is undeniably relevant, it is not singularly dispositive.' . . . Thus, this undue emphasis on the extent of appellant's past conduct was error. [¶] The court . . . also abused its discretion in failing to carefully consider the 'nature and circumstances' of the present offense . . . ." Israel also argues he "is some 52 years old . . . [and] would not be released until he is a very old man" on the basis of "a non-violent offense . . . which occurred 13 years prior."

We are not persuaded by these arguments.

Contrary to Israel's assertion the trial court relied *solely* on the fact his current offense represented "repeated conduct," the court also characterized Israel's conduct as "disturbing," a description with which we agree. Israel targeted an eight-year-old girl, sexually assaulted her by fondling her knee and then pressing his naked penis against her leg while he caressed himself and moaned. The child was essentially trapped in her seat, too frightened to yell for help. Also contrary to Israel's assertions, there was violence involved in this crime: he threatened two different witnesses with violence by telling Corona he had a knife and by threatening to "rearrange" Hernandez's testicles. (See Cal. Rules of Court, rule 4.421(a)(6) [threatening witnesses is an aggravating factor].)

Advanced age is not necessarily a mitigating factor. (See *People v. Strong* (2001) 87 Cal.App.4th 328, 332 ["middle age, considered alone, cannot take a defendant outside the spirit of the law; otherwise, the very factor that takes a defendant within the spirit of the law – a lengthy criminal career with at least one serious or violent felony – would have the inevitable consequence – age – that would purportedly take him outside it"].) Moreover, the strike was not prohibitively remote given the other factors relied on by the trial court to find that Israel was within the Three Strikes scheme. (See *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 [remoteness of 17-year-old priors insignificant in light of defendant's extremely long criminal history]; *People v. Barrera* (1999) 70 Cal.App.4th 541, 552-555 [14-year-old conviction not too remote in light of defendant's lengthy

7

criminal history].) Because Israel served a prison term for his child molesting prior conviction, he was not on the streets for the entire time between that conviction and this current case.

We conclude Israel's overall record, his egregious recidivism in committing similar sexual offenses over and over, and the disturbing nature of his latest offense (which derives from both the victim's extreme vulnerability and Israel's accompanying threats of violence to bystanders) constituted sufficiently compelling reasons for the trial court to deny his *Romero* motion. (See *People v. Strong*, *supra*, 87 Cal.App.4th at p. 338 ["the overwhelming majority of California appellate courts have reversed the dismissal of, or affirmed the refusal to dismiss, a strike of those defendants with a long and continuous criminal career"]; see also *People v. Carmony, supra*, 33 Cal.4th at p. 378 [" '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' "].)

We conclude the trial court did not abuse its discretion by denying Israel's *Romero* motion.

2. *Presentence custody credits were incorrectly calculated.*

Israel contends the trial court erred by refusing to award him any presentence custody credits. As the Attorney General concedes, this claim has merit.

The trial court believed Israel was not entitled to any presentence custody credits because the jury had returned a recidivist sexual offender finding (§ 667.71). However, section 667.71 has nothing to say about conduct credits. Rather, conduct credits are governed by section 2933.1, subdivision (a), which puts a 15 percent limit on presentence custody credits for defendants who have been previously convicted of child molesting under section 288, subdivision (a). (See § 667.5, subd. (c)(6).)

Hence, Israel was entitled to a total of 606 days of presentence custody credits, consisting of 527 actual days credit, plus 79 days of conduct credit. This error must be corrected.

8

3. *Restitution fine was improperly imposed.*

Israel contends the trial court erred by imposing a $5,000 restitution fine under section 294. As the Attorney General concedes, this claim has merit.

Section 294 provides, in pertinent part:

"(a) Upon conviction of any person for a violation of Section 273a, 273d, 288.5, 311.2, 311.3, or 647.6, the court may, in addition to any other penalty or restitution fine imposed, order the defendant to pay a restitution fine based on the defendant's ability to pay not to exceed five thousand dollars ($5,000), upon a felony conviction, or one thousand dollars ($1,000), upon a misdemeanor conviction, to be deposited in the Restitution Fund to be transferred to the county children's trust fund for the purposes of child abuse prevention.

"(b) Upon conviction of any person for a violation of Section 261, 264.1, 285, 286, 288a, or 289 where the violation is with a minor under the age of 14 years, the court may, in addition to any other penalty or restitution fine imposed, order the defendant to pay a restitution fine based on the defendant's ability to pay not to exceed five thousand dollars ($5,000), upon a felony conviction, or one thousand dollars ($1,000), upon a misdemeanor conviction, to be deposited in the Restitution Fund to be transferred to the county children's trust fund for the purpose of child abuse prevention."

Israel was convicted of violating section 288, subdivision (a), which is not one of the offenses enumerated in either subdivision (a) or subdivision (b) of section 294, and therefore this fine must be stricken. In addition, the parties note the abstract of judgment confusingly refers to his conviction as a violation of section "288(a)," which may have engendered the error here because section 288a [illegal oral copulation] *is* one of the crimes covered by section 294. The record should be corrected to clearly reflect Israel was convicted of child molesting under section 288, subdivision (a).

4. *The trial court failed to impose mandatory penalty assessments and surcharges related to section 290.3.*

The Attorney General contends the trial court erred during sentencing by failing to impose mandatory penalty assessments and surcharges in connection with a $500 sex offender fine under section 290.3. This claim has merit.

Section 290.3, subdivision (a), provides in pertinent part: "Every person who is convicted of any offense specified in subdivision (c) of Section 290 shall, in addition to any imprisonment or fine, or both, imposed for commission of the underlying offense, be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine."

Because Israel had previously been convicted of child molesting, an offense specified in section 290, subdivision (c), the trial court properly imposed a $500 fine for his current conviction.

However, in addition to the fine itself, the trial court should have imposed a series of additional, mandatory penalties and surcharges. Israel's $500 sex offender fine was subject to the following: a $500 state penalty under section 1464, subdivision (a)(1)[3]; a $100 state surcharge under section 1465.7, subdivision (a)[4]; a $250 state court construction penalty under Government Code section 70372[5]; a $350 county penalty

---

[3]    Section 1464, subdivision (a), in pertinent part, provides "there shall be levied a state penalty in the amount of ten dollars ($10) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses."

[4]    Section 1465.7, subdivision (a), provides: "A state surcharge of 20 percent shall be levied on the base fine used to calculate the state penalty assessment as specified in subdivision (a) of Section 1464."

[5]    Government Code section 70372, subdivision (a), in pertinent part, provides "there shall be levied a state court construction penalty, in the amount of five dollars ($5) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses."

10

under Government Code section 76000[6]; a $50 DNA project penalty under Government Code section 76104.6[7]; a $200 additional state-only penalty under Government Code section 76104.7[8]; and a $100 penalty to support county emergency medical services under Government Code section 76000.5.[9] (See *People v. Corrales* (2013) 213 Cal.App.4th 696, 702 [$150 drug program fee imposed under Health and Safety Code section 11372.7 obligated defendant to pay $540 when seven mandatory penalty and surcharge provisions were taken into account].)

The sum of these mandatory penalties and surcharges comes to $1,550, which means Israel was obligated to pay $2,050. Because the sex offender penalty prescribed by section 290.3 is subject to a defendant's ability to pay, we will remand this matter to the trial court for a determination of Israel's ability to pay the sex offender fine in light of

---

[6] Government Code section 76000, subdivision (a), in pertinent part, provides that "in each county there shall be levied an additional penalty in the amount of seven dollars ($7) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses."

[7] Government Code section 76104.6, subdivision (a)(1), in pertinent part, provides that "for the purpose of implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act (Proposition 69), as approved by the voters at the November 2, 2004, statewide general election, there shall be levied an additional penalty of one dollar ($1) for every ten dollars ($10), or part of ten dollars ($10), in each county upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses."

[8] Government Code section 76104.7, subdivision (a), in pertinent part, provides that "in addition to the penalty levied pursuant to Section 76104.6, there shall be levied an additional state-only penalty of four dollars ($4) for every ten dollars ($10), or part of ten dollars ($10), in each county upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses."

[9] Government Code section 76000.5, subdivision (a)(1), in pertinent part, provides that "for purposes of supporting emergency medical services pursuant to Chapter 2.5 (commencing with Section 1797.98a) of Division 2.5 of the Health and Safety Code, in addition to the penalties set forth in Section 76000, the county board of supervisors may elect to levy an additional penalty in the amount of two dollars ($2) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses."

11

the mandatory additional penalties and surcharges that should have been imposed. (See *People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1530-1532 [because section 1202.5 theft-related fine has "ability to pay" provision, on remand trial court must consider associated assessments and surcharges when calculating defendant's ability to pay].)

5. *The trial court failed to impose mandatory penalty assessments and surcharges related to section 288, subdivision (e).*

The Attorney General contends the trial court erred during sentencing by failing to impose mandatory penalty assessments and surcharges in connection with a $1,000 fine imposed pursuant to the child molesting statute. This claim has merit.

Section 288, subdivision (e), provides, in pertinent part: "Upon the conviction of any person for a violation of subdivision (a) or (b), the court may, in addition to any other penalty or fine imposed, order the defendant to pay an additional fine not to exceed ten thousand dollars ($10,000). In setting the amount of the fine, the court shall consider any relevant factors, including, but not limited to, the seriousness and gravity of the offense, the circumstances of its commission, whether the defendant derived any economic gain as a result of the crime, and the extent to which the victim suffered economic losses as a result of the crime." The trial court imposed a $1,000 fine under this provision.

Applying the same seven statutory provisions discussed *ante*, the Attorney General asserts this $1,000 fine should have been enhanced by an additional $3,100. Presumably because section 288, subdivision (e), does not contain an express "ability to pay" provision, however, the Attorney General does not suggest remanding to the trial court for a further inquiry into Israel's financial condition, as she did for the section 290.3 fine. But section 288, subdivision (e), does allow the trial court to consider "any relevant factors" in setting the amount of the fine, which would seem to include the defendant's financial condition. Moreover, we have already determined this matter must be remanded for a consideration of Israel's ability to pay the section 290.3 fine in light of its actual amount after accounting for the mandatory penalty assessments and surcharges. The trial court should undertake the same analysis with regard to the section 288, subdivision (e), fine.

12

## DISPOSITION

The judgment is affirmed in part and reversed in part. On remand, the abstract of judgment must be amended to reflect a total of 606 days presentence custody credits, the $5,000 restitution fine imposed under section 294 must be stricken, and the trial court must determine Israel's ability to pay the fines imposed under sections 290.3 and 288, subdivision (e), in light of the applicable mandatory penalty assessments and surcharges, as discussed in this opinion. The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

13